Constance B. Ruby, t/a Walnut Bottom Tavern *v.* Carlisle Zoning Hearing Board et al. William L. Shelley et al., Appellants.

William L. Shelley et al. *v* Zoning Hearing Board of Borough of Carlisle et al. Constance B. Ruby, t/a Walnut Bottom Tavern, Appellant.

Argued January 28, 1985, before Judges Rogers, MacPhail and Doyle, sitting as a panel of three.

Dale F. Shughart, Jr., Fowler, Addams, Shughart
& Rundle, for appellant/appellee, Constance B. Ruby
t/a Walnut Bottom Tavern.

Frances H. Del Duca, Faller & Del Duca, for appellant/appellee, William L. Shelley et al.

OPINION BY JUDGE ROGERS, March 4, 1985:

This is the appeal of William Shelley and other protesting neighbors (Shelley) of Walnut Bottom Tavern, a fire-damaged, lawful nonconforming bar and restaurant, from an order of the Court of Common Pleas of Cumberland County modifying, and affirming as modified, an order of the Carlisle Zoning Hearing Board permitting Constance Ruby, the tavern's owner, to repair and use her property as before.[1] Mrs. Ruby has intervened in this appeal.[2]

The Walnut Bottom Tavern was a nonconforming use in the R-2 Residential District in which it was located. After the tavern was partially destroyed by

---

[1] William L. Shelley, W. L. Hall, Louis F. Del Duca and Frances H. Del Duca are the protesting neighbors appealing from the order of the court below. We will call these people all under the name of "Shelley."

[2] In an ancillary action, Common Pleas Court Number 3039 Civil 1983, at the time of the 1983 appeal, Ruby filed a petition for an order that Shelley "post bond as a condition to proceed with the appeal." Section 1008(4) of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, as amended, 53 P.S. §11008(4). The court had a hearing, took evidence and decided that Shelley's appeal was not frivolous. Ruby has appealed from the court's order. We affirm the court below because Shelley's appeal clearly was not frivolous.

fire on August 22, 1979, Mrs. Ruby applied for a permit to rebuild. The Carlisle zoning enforcement officer refused the permit on the ground that Section 311(5) of the Carlisle Borough's Codified Ordinances prohibits the restoration of a nonconforming use damaged to the extent of more than fifty percent of its assessed value. Section 311(5) reads as follows:

> *Damage or Destruction*—In the event that a nonconforming use in any district is destroyed or partially destroyed by fire, explosion, or other cause, or otherwise damaged to the extent of fifty (50%) percent or more of either its assessed valuation (as determined from the assessment rolls effective at the date of damage or destruction) or its bulk of all buildings, structures, and other improvements on the lot, such nonconforming uses shall terminate and the lot shall thereafter be used only for conforming uses.
>
> In any case, whether conforming or nonconforming, the remains of any building so destroyed must be removed from the premises within six (6) calendar months so that the same shall not remain as a nuisance thereon.

Mrs. Ruby appealed the zoning officer's decision to the borough zoning hearing board which conducted a hearing, and on April 10, 1980, issued a decision in which it concluded that the term "assessed valuation" in the ordinance meant "fair market value." The board found that the tavern was damaged to the extent of less than fifty percent of its fair market value and less than fifty percent of its bulk. Accordingly, the board decided that the zoning permit should issue. The common pleas court effectively affirmed the board's decision, and also directed the board to issue a permit. Shelley appealed to this court. We

reversed the trial court's order "because the owner failed properly to challenge the validity of . . . [the ordinance], and she also failed to request or introduce evidence justifying the granting of a variance. . . ." *Shelley v. Zoning Hearing Board of Carlisle,* 71 Pa. Commonwealth Ct. 153, 159, 454 A.2d 664, 667 (1983).

Mrs. Ruby again applied for the permit, which was again denied by the borough enforcement officer. She appealed to the board, this time properly challenging the constitutionality of the ordinance under Section 1004 of the Pennsylvania Municipalities Planning Code.[3] In September, 1983, the board found that the portion of Section 311(5) relating to "assessed value" was unconstitutional as applied to Ruby and her structure and again directed the building permit to issue. Shelley appealed to the court below.

The common pleas court held that the provision of Section 311(5) of the zoning ordinance relating to assessed valuation was unconstitutional but that the provision concerning bulk was not, and directed the board to issue a building permit because the board had found that the tavern had not been damaged to the extent of fifty percent of its bulk. The common pleas court received no evidence, so that our review is to determine whether the board committed an abuse of discretion or an error of law. *Campbell v. Zoning Hearing Board of Plymouth Township,* 10 Pa. Commonwealth Ct. 251, 310 A.2d 444 (1973).

Shelley's principal contentions are that Mrs. Ruby's renewed application to rebuild the tavern is barred as res judicata; that the trial court erred in holding invalid the provision of Section 311(5) of the zoning ordinance terminating nonconforming uses

---

[3] Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10101-11202.

destroyed to the extent of fifty percent or more of their assessed values; and that the trial court erred in holding that under Section 311(5) the nonconforming use of Mrs. Ruby's property as a tavern could continue because the building had not been damaged to the extent of more than fifty percent of its bulk.

We agree with the sound analysis of the common pleas court on these issues and affirm. The court properly rejected Shelley's res judicata contention because the cause of action in the first *Shelley* case and the cause of action in this case are not the same. *See Duquesne Slag Products Co. v. Lench,* 490 Pa. 102, 415 A.2d 53 (1980). In the first *Shelley* case, Mrs. Ruby requested a variance; here she challenged the validity of the zoning ordinance. As the trial judge noted, "since she did not raise [the validity question] before, she is not barred from raising it now.[4]

We agree with the court's conclusion that the portion of Section 311(5) terminating nonconforming uses upon damage to the extent of fifty percent of assessed value is invalid as establishing an unreasonable restriction upon property owners' rights to continue lawful nonconforming uses.[5]

The testimony of an expert appraiser was to the effect that the actual value of Mrs. Ruby's property before the 1979 fire was $130,000. The assessed value was $21,280. Thus under Section 311(5) of the ordinance, Mrs. Ruby's commercial use of her valuable property would be terminated as the result of fire or other damage to the extent of about $10,000,

[4] *Ruby v. Carlisle Zoning Hearing Board* (No. 3039 C.D. 1983, filed July 10, 1984), slip op. at 10.
[5] *Id.* at 26.

or less than one tenth of its actual value. This would be confiscatory. Holdings to the same effect in other jurisdictions are: *North Hornell v. Rauber,* 181 Misc. 546, 40 N.Y.S. 2d 938 (N.Y. Sup. Ct. 1943); *State ex rel. Covenant Harbor Bible Camp v. Steinke,* 7 Wis. 2d 275, 96 N.W. 2d 356 (1959).

Shelley additionally contends that the court erred in upholding the zoning hearing board's action because the court relied on the board's finding at the 1980 hearing of damage of less than fifty percent of bulk allegedly without considering testimony offered at the 1983 board hearing that the tavern had been damaged to the extent of more than fifty percent of its bulk. The 1983 testimony to which Shelley refers does not establish the extent of the damage as a percentage of bulk. Bulk is defined in Section 202(2) of the ordinance as "the cubic volume of a building." The testimony in question concerned the dollar value of the tavern at the time of the fire and the cost of rebuilding; it was not related to bulk.

The board's finding in its 1980 decision that the property was not damaged to the effect of fifty percent of bulk is not only supported by the record, it was made a part of the 1983 record when Shelley offered it into evidence in the 1983 case.[6]

Order affirmed.

---

[6] Shelley additionally contends that under subsections (1)(b) and (2) Section 1011 of the Pennsylvania Municipalities Planning Code, Act of June 1, 1972; P.L. 333, *as amended,* 53 P.S. §11011(1)-(b), (2), the trial court erred in not considering the character of the community, as is required by subsection (1)(b), or the "locational suitability" of the tavern, as is required by subsection (2), before ruling that a portion of the ordinance was invalid. This argument is without merit. The trial court judge did "note all of guidelines in passing on the validity of this zoning ordinance." Moreover, we note that Section 1011(2) is not applicable to the present case, where there was an existing nonconforming use.

76

AND Now, this 4th day of March, 1985, the orders of the Court of Common Pleas of Cumberland County are affirmed.

Judge WILLIAMS, JR., did not participate in the decision in this case.